603 So.2d 685 (1992)
In re ESTATE OF Opal E. McMILLIAN, Deceased.
CHILDREN'S HOME OF CINCINNATI, OHIO, Appellant,
v.
EASTPOINT COMMUNITY ACTION COMMITTEE, INC., The Huntington Bank, Inc., f/k/a Huntington Bank of Kenton County, Inc., as Trustee of the Opal E. McMillian Revocable Trust, and the Huntington Trust Company of Florida, N.A., As Personal Representative of the Estate of Opal E. McMillian, Appellees.
No. 91-2584.
District Court of Appeal of Florida, First District.
August 18, 1992.
*686 Stephen C. Emmanuel, R. Stan Peeler and Carla A. Green of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellant.
Jan J. Hevier, Law Offices of Ben Watkins, Apalachicola, for appellee Eastpoint Community Action Committee; Howard L. Crown of Catalano, Fisher, Gregory & Crown, Naples, for Huntington Bank and Huntington Trust Co.
KAHN, Judge.
Appellant, Children's Home of Cincinnati, Ohio (Children's Home), appeals an order determining beneficiaries of the inter vivos revocable trust of Opal E. McMillian. We affirm.
On August 30, 1979, Opal E. McMillian executed a will in Cincinnati, Ohio by which she left her residual estate to Covington Trust and Banking Company of Kentucky or its successor as trustee and named the Covington Trust and Banking Company as executor. On the same date, Ms. McMillian executed a trust in which she named Covington Trust and Banking Company as trustee. Section 11 of the trust provides: "SITUS OF TRUST: The Trust hereby created shall be deemed a Kentucky Trust and shall in all respects be governed by the laws of the Commonwealth of Kentucky." The trust agreement directs the trustee to distribute two-thirds of the residue of the trust to Children's Home "for the establishment of a fund, the income of which shall be used for the vocational training of and the higher education of natural orphans to prepare them for life and a place in the community," and one-third to Eastpoint Community Action Committee, Inc. (Eastpoint) of Eastpoint, Florida "for the establishment of a community center." The trust provides that "[i]n the event Eastpoint ... is no longer in existence at the time of Grantor's death, then such bequest shall lapse and the entire residue of this Trust shall be paid to Hamilton County Children's Home of Cincinnati, Ohio... ." Although the trust document recites delivery of $100.00 to the trustee at execution, the evidence indicates the trust was never funded during Ms. McMillian's life.
Ms. McMillian died on March 18, 1988 at Tallahassee. A petition for administration was filed by Huntington Bank of Kenton County, Kentucky (Huntington Bank), formerly *687 The Covington Trust and Banking Company, in Franklin County, Florida, decedent's domicile, on May 27, 1988. The petition requested that Huntington Bank be appointed personal representative. On this same date the probate division admitted the will to probate but denied the petition for appointment of personal representative because Huntington Bank was not qualified to exercise fiduciary powers in Florida. On July 1, 1988, the court granted letters of administration to The Huntington Trust Company of Florida, (Huntington Trust).[1] On July 25, 1990, the personal representative filed a petition to determine beneficiaries and requested a determination of the disposition of the bequest to Eastpoint.
Eastpoint was incorporated in Florida on June 30, 1967. On December 16, 1981, Eastpoint was involuntarily dissolved for failure to file its annual report, as required by section 607.357, Florida Statutes. § 607.271, Fla. Stat. (1981).[2] Eastpoint was reinstated on May 26, 1989. § 607.271, Fla. Stat. (1987).[3]
In response to Huntington Trust's petition, Eastpoint alleged that it was a beneficiary of the estate by action of section 607.271(5), Florida Statutes. Children's Home filed a motion to dismiss, alleging that the court lacked jurisdiction over the trust, the personal representative had no standing to bring the action, and the trustee was an indispensable party and had not been joined. On November 16, 1990, Huntington Bank, the trustee, filed a joinder with personal representative's petition to determine beneficiaries. In its response to the joinder, Children's Home objected pursuant to section 737.203, Florida Statutes, to the trial court entertaining proceedings to ascertain beneficiaries of the trust. Huntington Bank also filed a petition to be added as a party.
In an order entered on May 29, 1991, the trial court added Huntington Bank as a party and determined that he had jurisdiction of the trust. On July 12, 1991, the trial court entered an order in which he determined that Eastpoint was a beneficiary of the trust. From that order, Children's Home filed a timely notice of appeal. Eastpoint, Huntington Bank, and Huntington Trust all urge affirmance.
On appeal, Children's Home argues that the trial court did not have jurisdiction to determine the beneficiaries of a Kentucky trust and the trial court ignored the language in the trust and thereby erred in finding that the bequest to Eastpoint did not lapse.
The personal representative's decision to seek direction from the circuit court was appropriate. Under Article IV of the McMillian will, the personal representative has an obligation to pay assets to the trustee "for the uses and purposes and upon the terms set forth in such Trust Agreement as it exists at the time of my death." In addition to being entitled to petition for determination of beneficiaries, the personal representative may also "invoke the jurisdiction of the circuit court to resolve judicial questions concerning the estate or its administration." § 733.603, Fla. Stat. (1989).
Section 737.203, Florida Statutes (1989), is central to appellant's contention that the circuit court had no authority to adjudicate the rights of the beneficiaries. This statute provides:
Over the objection of a party, the court shall not entertain proceedings under s. 737.201 for a trust registered, or having its principal place of administration, in another state unless all interested parties could not be bound by litigation in the courts of the state where the trust is registered or has its principal place of administration. The court may condition a stay or dismissal of a proceeding under this section on the consent of any party to jurisdiction of the state where the trust is registered or has its principal *688 place of business, or the court may grant a continuance or enter any other appropriate order.
This statute is not a jurisdictional bar. It is more in the nature of a venue statute, and speaks in terms of whether a Florida court will "entertain" trust proceedings. The statute further does not seem to require the judge to dismiss a case, even after the statutory provision is invoked, as evidenced by the final sentence of the statute which provides that the judge may enter orders of continuance, or other appropriate orders. The comments of the drafters of the Uniform Probate Code, accompanying section 7-203, which is materially similar to our section 737.203, indicate:
It is assumed that under this section a court would refuse to entertain litigation involving the foreign registered trust unless for jurisdictional or other reasons, such as the nature and location of the property or unusual interests of the parties, it is manifest that substantial injustice would result if the parties were referred to the court of registration... . [T]he issue is essentially only one of forum non conveniens in having litigation proceed in the most appropriate forum. This is the function of this section.
In this case, the location of the property is clearly Florida, since the property with which the trust would be funded consists of the assets of the decedent, who is domiciled in Florida. The great majority of assets appear to be stocks and bonds. There also seem to be present "unusual interests" in that the determination of trust beneficiaries depends upon construction of the Florida Corporation Code. Appellant has demonstrated no undue prejudice or significant inconvenience of parties or witnesses resulting from litigation in Florida. Also, we cannot overlook that the Kentucky trustee is content with the Florida forum.
The appellees argue that, in any event, the trust is not being administered in Kentucky. Evidence in the form of the testimony of Mr. Loescher, trust officer and vice president of Huntington Trust, indicates that the trust was never funded during Ms. McMillian's life. In other words, the first formal act of the trustee, since the trust document was executed, will be to receive the property as a bequest from Ms. McMillian. Black's defines "administer" as "manage, direct, or superintend affairs." Black's Law Dictionary (6th Ed. 1990) 44. Accordingly, this initial phase of administration is actually taking place in Florida. As further support of the proposition that the trust is not being administered in Kentucky, the record is clear that the Kentucky trustee has not only voluntarily submitted to the jurisdiction of the Florida court, but has actually sought out that jurisdiction by joining in the petition of the personal representative. There seems to be no logical reason why a foreign trustee should not be able to seek a ruling from the state whose law controls the ultimate disposition of trust assets. Therefore, the trial court correctly entertained trust proceedings to determine the beneficiaries of Ms. McMillian's trust.
On the dispositive substantive issue, Children's Home argues that the corporate reinstatement statute, section 607.271(5), Florida Statutes (1989),[4] does not come into play, since the settlor's intent may be determined from the four corners of the trust, and at the time of the operative event, Ms. McMillian's death, Eastpoint did not exist. Its subsequent reinstatement would, therefore, be irrelevant. This argument loses sight of the fact that the corporate reinstatement statute creates a legal fiction, whose purpose is to fill in gaps in corporate existence, despite the clearly established fact that such gaps have occurred. The Florida statute is broad enough to cover the present situation, even though the interests of a third party are at stake. Such conclusion is supported by court decisions allowing a reinstated corporation to pursue a cause of action against a third party, where the cause of action accrued after dissolution and before reinstatement. *689 See Capital Constr. Servs., Inc. v. Rubinson, 541 So.2d 748 (Fla. 3d DCA 1989); LeLac Property Owners' Ass'n Inc. v. Routh, 493 So.2d 1131 (Fla. 4th DCA 1986). Accordingly, we construe section 607.271(5) literally and make no blanket exception for property rights that would have vested in another entity were it not for the operation of this section. However, this decision does not foreclose different results on other facts. For instance, if it could be shown that a corporate reinstatement was fraudulently brought about simply to divest another party of an asset, and without any good faith intent to restore the corporation as a viable entity, an exception to the statute might exist. Children's Home in this case acknowledges, however, that there is no evidence of such fraudulent reinstatement. Another exception might be where assets have been distributed and the estate closed prior the time the corporation seeks reinstatement. Cf., First Coast Restaurants Inc. v. Vogel, 592 So.2d 1258 (Fla. 5th DCA 1992). The facts in this case do not support other than a literal construction.
AFFIRMED.
ERVIN and SMITH, JJ., concur.
NOTES
[1] Huntington Trust and Huntington Bank are subsidiaries of Huntington BancShares, an Ohio holding company which owns a number of trust companies.
[2] Repealed by Ch. 89-154, § 166, Laws of Florida, effective July 1, 1990.
[3] Repealed by Ch. 89-154, § 166, Laws of Florida, effective July 1, 1990.
[4] This section provides in part: "Whenever the application for reinstatement is approved and filed by the Department of State, the corporate existence shall be deemed to have continued without interruption from the date of dissolution."